# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 Case |
| | § | |
| BENNU TITAN LLC (F/K/A ATP TITAN | § | |
| LLC),[1] | § | |
| | § | |
| Debtor. | § | Case No. 17-30497 |

---

**MOTION OF CHAPTER 11 TRUSTEE OF BENNU TITAN LLC FOR ENTRY OF (I) AN ORDER (A) AUTHORIZING AND APPROVING BID PROCEDURES TO BE EMPLOYED IN CONNECTION WITH THE SALE OF CERTAIN ASSETS OF THE DEBTOR; (B) SCHEDULING AN AUCTION AND SALE HEARING; AND (C) APPROVING THE MANNER AND FORM OF NOTICE OF THE AUCTION AND SALE HEARING; AND (II) AN ORDER (A) AUTHORIZING AND APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES, CLAIMS, LIENS, AND OTHER INTERESTS TO THE <u>PURCHASER; AND (B) GRANTING RELATED RELIEF.</u>**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Gerald H. Schiff (the "<u>Chapter 11 Trustee</u>"), not individually, but in his capacity as chapter 11 trustee of the bankruptcy estate of Bennu Titan LLC (f/k/a ATP Titan LLC) (the "<u>Debtor</u>") in the above-captioned chapter 11 case (the "<u>Chapter 11 Case</u>"), hereby files this

---

[1]    The last four digits of Bennu Titan LLC's federal taxpayer identification number are 5187.

motion through undersigned counsel (the "Motion") for entry of (i) an order, substantially in the form attached hereto as Exhibit A (the "Bid Procedures Order"), pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007 and 9008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Bankruptcy Local Rules (the "Local Rules") of the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"):

    i.    authorizing and approving bid procedures set forth in Annex 1 to the Bid Procedures Order (the "Bid Procedures")[2] to be employed in connection with the proposed sale (the "Sale") of substantially all of the assets of the Debtor, including the Titan Platform and the Export Pipelines (each as defined below) (collectively, the "Assets");

    ii.    scheduling an auction (the "Auction") and a hearing (the "Sale Hearing") to consider approval of the Sale of the Assets; and

    iii.    approving the manner and form of notice of the Auction and the Sale Hearing, substantially in the form attached hereto as Exhibit B (the "Sale Notice").

        The Chapter 11 Trustee also moves the Court, pursuant to Bankruptcy Code sections 105, 363 and 365, Bankruptcy Rules 2002, 6004 and 6006 and the Local Rules for the entry of an order in the form attached hereto as Exhibit C and as it may be modified by the Successful Bidder(s) (as defined below) (the "Sale Order"):

    i.    approving the Sale of the Assets, or any combination thereof, to one or more Successful Bidders free and clear of liens, claims, interests and encumbrances;

    ii.    approving the assumption and assignment by the Debtor of the RUE (as defined below), as applicable, to the Successful Bidder(s); and

    iii.    granting certain related relief.

        In support of the Motion, the Chapter 11 Trustee refers to the *Declaration of Gerald H. Schiff in Support of the Bid Procedures Motion* (the "Schiff Declaration"), filed contemporaneously herewith, and respectfully represent as follows:

---

[2] Each capitalized term used but not otherwise defined herein shall have the meaning ascribed to such term in the Bid Procedures.

## PRELIMINARY STATEMENT

1.        This Chapter 11 Case is almost 11 months old.  Since the time of his appointment over seven months ago, the Chapter 11 Trustee has taken a number of steps aimed at maximizing the value of the Debtor's estate, including regarding the potential sale of the Debtor's principal asset, the floating drilling and production Platform (defined below) located in the Gulf of Mexico.   Among other things, the Chapter 11 Trustee has:

- retained experienced advisors and consultants;

- collected and analyzed information regarding the Platform and the Debtor's other assets;

- prepared marketing materials regarding the sale of the Platform;

- populated a data room with such marketing materials, as well as historical, technical and other information regarding the Platform and related assets;

- contacted and met with certain potentially interested parties regarding the purchase of the Platform;

- responded to diligence requests from various potentially interested parties;

- entered into various post-petition financing orders to allow the Chapter 11 Trustee to carry out its efforts to market the Platform; and

- interacted with Statoil USA E&P – the party that is liable (and will remain liable) for the maintenance, monitoring and removal of the Platform from its current location – regarding the Platform's condition.

2.        The Chapter 11 Trustee believes that the time has now come to start a formal auction process for the Assets and that the adoption of the Bid Procedures and competitive auction process described herein will promote and facilitate the Chapter 11 Trustee's marketing activities, maximize the value of the Debtor's estate and will provide all interested parties with sufficient opportunity to participate in the bidding process.

## THE DEBTOR'S ASSETS AND SALE PROCESS

### A.     The Platform

3.     The Debtor owns a floating drilling and production platform known as the "Bennu Titan" (the "Platform") and related oil and gas export pipelines (the "Export Pipelines"), which are used to produce hydrocarbons in the Gulf of Mexico.  Since its installation in 2009, the Platform has been located on the Mississippi Canyon lease block number 941 ("MC941") in the central Gulf of Mexico.  It is a high quality, built-in-America structure with capacity for 6 dry tree wells and 3 satellite wells.  The Platform has an estimated 40 year life and was designed to be moved to other properties.  It is rated up to 9,500 feet water depth and is very similar in function to a spar platform in terms of stability, yet has an innovative semi-submersible type deep draft design with advantages in wave response, loading, and other features.  As currently configured, the Platform is capable of processing 25,000 barrels of oil per day and 50 million cubic feet of natural gas per day, but can be upgraded to process 70,000 barrels of oil per day and 100 million cubic feet of natural gas per day.

### B.     History of the Platform

4.     The Platform was built by ATP Oil & Gas Corporation ("ATP") in 2010 at a cost of over $700 million.  In September 2010, ATP entered into a series of transactions with respect to the Platform.  First, ATP contributed the Platform to its indirect subsidiary, ATP Titan LLC – the Debtor in this case.  Second, ATP Titan LLC entered into that certain Term Loan Agreement, dated as of September 24, 2010 (as amended, the "Titan Credit Agreement") with CLMG Corp., as agent (the "Prepetition Agent"), and Beal Bank USA, as lender (the "Prepetition Lender" and, together with the Agent, the "Prepetition Secured Parties"), pursuant to which the Prepetition Lender extended $350 million in principal amount of loans to ATP Titan LLC, secured by, among other things, the Platform, the Export Pipelines, and the equity in ATP Titan LLC.  Third, ATP and ATP Titan LLC entered into a platform use agreement (the

"Platform Use Agreement"), setting forth the terms of ATP's use and operation of the Platform, which included payments of monthly fees to ATP Titan LLC, that ATP Titan LLC used, in turn, to service its payment obligations under the Titan Credit Agreement.

5.      ATP filed for bankruptcy on August 17, 2012.  ATP Titan LLC did not file for bankruptcy at that time.  Bennu Oil & Gas, LLC ("Bennu O&G") was formed by certain lenders to ATP as the acquisition vehicle to purchase substantially all of the assets of ATP pursuant to section 363 of the Bankruptcy Code (the "ATP Sale").  The ATP Sale to Bennu O&G closed on November 1, 2013.  ATP's arrangements related to the Platform, including the Platform Use Agreement, were preserved throughout and after ATP's bankruptcy.  Specifically, pursuant to the ATP Sale, Bennu O&G was assigned the Platform Use Agreement, ATP's indirect equity interest in ATP Titan LLC and certain of ATP's other assets.  Following the ATP Sale, ATP Titan LLC was renamed Bennu Titan LLC.

6.      From the time of the ATP Sale through November 2016, Bennu O&G used the Platform to produce hydrocarbons from three dry tree wells (the "Dry Tree Wells") and one satellite well (the "AT63 Well"), each of which are owned by Bennu O&G (not the Debtor) and are connected to the Platform.

## C.      The Debtor's Chapter 11 Case and Bennu O&G's Chapter 7 Case

7.      After Bennu O&G failed to pay the monthly use fees owed to the Debtor under the Platform Use Agreement for over six months, on August 11, 2016 (the "Petition Date"), the Prepetition Secured Parties filed an involuntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Delaware Court") [D.I. 1], thereby commencing this Chapter 11 Case.

8.      On September 9, 2016, the Delaware Court entered an order for relief. [D.I. 7]  On November 1, 2016, the Delaware Court entered an order directing the appointment

of a chapter 11 trustee in the Chapter 11 Case. [D.I. 87]  On November 23, 2016, the Delaware Court entered an order appointing Gerald H. Schiff as the chapter 11 trustee in the Chapter 11 Case. [D.I. 103]  On January 26, 2017, the Delaware Court transferred venue of the Chapter 11 Case to the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Texas Court", and together with the Delaware Court, the "Court"). [D.I. 190]

9.     On December 20, 2016, the Chapter 11 Trustee filed a motion to obtain post-petition financing from the Prepetition Secured Parties (the "DIP Motion") [D.I. 109].  On December 22, 2016, the DIP Motion was approved by the Delaware Court on an interim basis, and five successive interim orders have been entered since (each, a "DIP Order") [D.I. 120, 181, 210, 220, 251].  The DIP Orders and the successive budgets approved by the Prepetition Secured Parties provide for financing to allow the Chapter 11 Trustee to pay for certain insurance for the Platform and the Export Pipelines and to retain professionals to assist the Chapter 11 Trustee with the marketing of the Platform.  The DIP Orders and the DIP Credit Agreement also set forth several milestones for the Debtor's sale process.  (*See*, DIP Credit Agreement, at 5.13).

10.     On November 30, 2016, Bennu O&G (along with its affiliates, Bennu Blocker, Inc., and Bennu Holdings, LLC) filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code, and Janet S. Northrup was appointed to serve as the Chapter 7 Trustee (the "Chapter 7 Trustee") in Bennu O&G's bankruptcy case (the "Chapter 7 Case") (Case No. 16-35930).  On that same day, Bennu O&G filed a motion to reject the Platform Use Agreement [Bennu O&G D.I. 3].  On January 4, 2017, this Court entered an *Order Authorizing and Approving the Rejection of that Certain Platform Use Agreement Entered into with Bennu Titan LLC Nunc Pro Tunc to November 30, 2016* [Bennu O&G D.I. 34], in which the Platform Use Agreement was rejected by Bennu O&G effective as of November 30, 2016.

D.      **The Platform's Current Status**

11.      Prior to the commencement of the Chapter 7 Case, Bennu O&G shut in production from all wells connected to the Platform (i.e., the Dry Tree Wells and the AT63 Well), and production has not recommenced.

12.      The Platform is authorized by the applicable governmental entities to reside at its current location at MC941 pursuant to an offshore oil and gas lease for which Statoil USA E&P Inc. ("Statoil") and Bennu O&G are co-record title owners.   The Debtor is not a party under such lease or liable for the obligations thereunder.   After and as a result of the commencement of Bennu O&G's Chapter 7 Case, the United States Bureau of Safety & Environmental Enforcement ("BSEE") ordered Statoil, as record title owner of the MC941 lease, to maintain and monitor the MC941 lease and the Platform, including complying with the requirements of the United States Coast Guard that the Platform be manned with a licensed marine crew at all times.   Statoil was also ordered to maintain and monitor the Mississippi Canyon lease block number 942 lease – where the MC942 #A3 Dry Tree Well is tied into the Platform – as it is, along with Bennu O&G, the co-record title owner of such lease.[3]   Following the issuance of such orders, Statoil replaced Bennu O&G as the designated operator of the MC941 lease and MC942 lease and continues to maintain and monitor the MC941 and MC942 leases and the Platform, including paying all costs necessary to man and maintain the Platform at its current location (the "Platform Maintenance and Monitoring Obligations").

13.      The sale of the Platform as contemplated by this Motion will not in any way impact or diminish Statoil's ongoing maintenance and monitoring obligations as ordered by BSEE for so long as the Platform remains located on the MC941 lease.   In addition, because

---

[3] Statoil, as predecessor lessee for the Atwater Valley lease block number 63 lease – where the AT63 Well #4 has a flow line and umbilical that tie into the Platform – was also ordered by BSEE to maintain and monitor such lease, along with several other predecessor lessees.

Statoil is the operator of record and record title owner under the MC941 lease, Statoil (and not the Debtor[4]) is obligated to remove the Platform from the MC941 lease (the "Platform Decommissioning Obligations"). Similarly, because Statoil is the operator and joint record owner under the MC942 lease and predecessor lessee under the AT63 lease, it is obligated to plug and abandon the Dry Tree Wells and the AT63 Well[5] (which are not property of the Debtor but are connected to the Platform) (the "Well Decommissioning Obligations," and together with the Platform Decommissioning Obligations, the "Decommissioning Obligations"). Following the Sale of the Platform, the purchaser of the Platform will not be liable for the Decommissioning Obligations, and Statoil will continue to remain liable for such obligations, including the Platform Decommissioning Obligations, so long as the Platform remains located on the MC941 lease.

14. The proposed Sale Order provides that:

1) upon the Purchaser notifying Statoil that the Purchaser wishes to remove the Platform from the MC941 lease, Statoil shall be obligated to render the Platform free and afloat as soon as possible, including, without limitation, by performing the adequate Well Decommissioning Obligations;

2) upon the Purchaser notifying Statoil that the Purchaser wishes to use the Platform at its current location either directly or indirectly through a third party, Statoil shall perform its Well Decommissioning Obligations as soon as possible;

3) for so long as the Platform resides on the MC941 lease, the Platform Maintenance and Monitoring Obligations shall continue to be borne solely by Statoil; however, the Purchaser shall have the right to (i) perform non-mandatory inspections of the Platform, directly or through a third party, and (ii) have additional non-mandatory maintenance performed on the Platform, in each case solely at the Purchaser's sole expense; and

---

[4] BSEE has not asserted that the Debtor is liable for the Platform Decommissioning Obligations and did not include such claims in its proof of claim filed against the Debtor (as it did in its claim filed against Bennu O&G in the Chapter 7 Case).

[5] For the AT63 Well, Statoil, like any other predecessor lessee, is liable to the extent ordered by the BSEE.

4) except as provided in (1) or (2) above, Statoil shall enter into a platform use agreement with the Purchaser on terms acceptable to the Purchaser prior to Statoil directly or indirectly performing any decommissioning work from or on the Platform.

15.     Prospective purchasers will, pursuant to this Motion and the Bid Procedures, have the option to include the Export Pipelines in their bid for the Platform.  The Debtor is the operator of record and the title owner of the Export Pipelines under a right of use and easement (the "RUE"), and because the case law is unsettled on this issue, the Chapter 11 Trustee requests approval under this Motion to assume and assign the RUE to the Purchaser, should the Export Pipelines be included in the Purchased Assets.  To the extent that the Purchaser seeks to include the Export Pipelines in the Purchased Assets, it is envisioned that the decommissioning obligations with respect to such Export Pipelines (the "Export Pipelines Decommissioning Obligations") would be assumed by the Purchaser.  BSEE has filed a proof of claim against the Debtor asserting claims in the amount of $3,641,568 for supplemental bonding with respect to the Export Pipelines Decommissioning Obligations.

E.     **Marketing of the Assets and Need for a Timely Sale Process**

16.     Since his appointment and in furtherance of the sale process and milestones outlined in the DIP Orders, the Chapter 11 Trustee has been conducting an intensive marketing process of the Debtor's assets.  For instance, the Chapter 11 Trustee, with the assistance of his counsel and consultants, has contacted each deepwater operator in the Gulf of Mexico, along with the other potentially interested parties, regarding the Sale of the Platform and related assets.  The Chapter 11 Trustee has provided data room access to, and/or responded to diligence requests from, many interested parties.  The Chapter 11 Trustee believes that the marketing process it has conducted to date will now benefit from the adoption of the Bid Procedures and the auction process contemplated thereby.

17.     The Chapter 11 Trustee believes that the auction process and time periods set forth in the Bid Procedures are reasonable.  The Chapter 11 Trustee also believes that, in light of his extensive marketing activities to date, the process will provide parties with sufficient time and information necessary to formulate a bid to purchase the Assets.  In formulating the procedures and time periods, the Chapter 11 Trustee balanced the need to provide adequate and appropriate notice to parties in interest and to potential purchasers with the need to efficiently sell the Assets.  Given the Chapter 11 Trustee's history of marketing the Assets, the Chapter 11 Trustee believes that any parties that may have an interest in bidding at the Auction will not be starting from scratch in formulating their bids.  Thus, the Chapter 11 Trustee has determined that pursuing the Sale in accordance with the proposed procedures is in the best interest of the Debtor's estate and will provide all interested parties with sufficient opportunity to participate.

## **BID PROCEDURES**

18.     The Bid Procedures are designed to maximize value for the Debtor's estate and will enable the Chapter 11 Trustee to review, analyze and compare all bids received to determine which bid is in the best interests of the Debtor's estate and creditors. The Bid Procedures describe, among other things, the procedures for parties to access due diligence, the manner in which bidders and bids become "qualified," the receipt of bids received, the conduct of any auction, the selection and approval of any ultimately successful bidders, and the deadlines with respect to the foregoing Bid Procedures. The Chapter 11 Trustee submits that the Bid Procedures afford the Chapter 11 Trustee a sufficient opportunity to pursue a sale process that will maximize the value of the estate.

19.     The salient terms of the Bid Procedures are as follows:[6]

---

[6] The brief description of the Bid Procedures contained herein is for the convenience of the Court and parties in interest. In the event of any inconsistency or ambiguity between the terms of the Bid Procedures and the Motion, the Bid Procedures shall control.

    i.    **Interested Parties**. Unless otherwise ordered by the Court for cause shown, to participate in the bidding process (the "Bidding Process"), each interested person or entity (each, an "Interested Party") other than the Secured Parties must deliver the following to the Broker, with copy to the Chapter 11 Trustee and counsel to the Chapter 11 Trustee, so as to be received no later than 5:00 p.m. (Central Prevailing Time) on the tenth day after the entry of the Bid Procedures Order:

    a.  an executed confidentiality agreement in form and substance reasonably satisfactory to the Chapter 11 Trustee;

    b.  a statement and other factual support demonstrating to the Chapter 11 Trustee's reasonable satisfaction, that the Interested Party has a *bona fide* interest in purchasing all or a portion of the Assets; and

    c.  sufficient information, as defined by the Chapter 11 Trustee, to allow the Chapter 11 Trustee to determine that the Interested Party has the financial wherewithal to close a sale, including, but not limited to, current audited financial statements of the Interested Party (or such other form of financial disclosure acceptable to the Chapter 11 Trustee).

If the Chapter 11 Trustee determines, after receipt of the items identified above, that an Interested Party has a *bona fide* interest in purchasing all or a portion of the Assets and has the financial wherewithal and operational ability to consummate the transaction, such Interested Party will be deemed a "Potential Bidder" and the Chapter 11 Trustee will deliver to such Potential Bidder: (a) an electronic copy of a proposed asset purchase agreement (the "Proposed Agreement") by the later of two business days after the Chapter 11 Trustee makes that determination and (b) access information for the Chapter 11 Trustee's confidential electronic data room concerning the Assets (the "Data Room") no later than two business days after the Chapter 11 Trustee makes that determination.

The Chapter 11 Trustee shall provide (a) CLMG Corp., as Prepetition Agent, and Beal Bank USA, as Prepetition Lender, under the Titan Credit Agreement, (b) CLMG Corp., as administrative agent (the "Postpetition Agent"), and Beal Bank USA, as lender (the "Postpetition Lender" and, together with the Postpetition Agent, the Prepetition Agent and the Prepetition Lender, the "Secured Parties"), under the Debtor's DIP Credit Agreement (the "Postpetition Facility") and (c) the Office of the United States Trustee for the Southern District of Texas, Houston Division (the "U.S. Trustee") with a list of all Interested Parties and all Potential Bidders.   Any dispute concerning whether an Interested Party should be designated as a Potential Bidder shall be resolved by the Court.

   ii.    **Due Diligence**. Until the Bid Deadline (as defined below), in addition to access to the Data Room, the Chapter 11 Trustee will provide any Potential Bidder such due diligence access, access to the Platform, or additional information as may be reasonably requested by the Potential Bidder that the Chapter 11 Trustee determines to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to the Broker.  The Chapter 11 Trustee, with the assistance of the Broker, will coordinate all reasonable requests

for additional information and due diligence access from Potential Bidders. In the event that any such due diligence material is in written form and has not previously been provided to any other Potential Bidder, the Chapter 11 Trustee will simultaneously provide such material to all Potential Bidders, the Postpetition Agent and the Prepetition Agent. Unless otherwise determined by the Chapter 11 Trustee, the availability of additional due diligence to a Potential Bidder will cease if (a) the Potential Bidder does not become a Qualified Bidder, from and after the Bid Deadline, or (b) these Bid Procedures are terminated in accordance with their terms.

iii.   **Qualified Bids**. Each Potential Bidder and each offer, solicitation or proposal by a Potential Bidder must satisfy each of the conditions to be deemed a "<u>Qualified Bidder</u>" and "<u>Qualified Bid</u>," respectively, set forth in "Bid Deadline" and "Bid Requirements" below. For the avoidance of doubt, Potential Bidders may submit bids for individual Assets or combinations of Assets and are not required to submit bids for all Assets, but all bids must at least include the Platform.

iv.   **Bid Deadline**. A Potential Bidder who desires to be a Qualified Bidder must deliver the Required Bid Documents (as defined below) so as to be received not later than 12:00 p.m. (Central Prevailing Time) on the thirtieth day after the entry of the Bid Procedures Order (the "<u>Bid Deadline</u>"), to the Broker, Brent Boudreaux of JAB Energy Solutions, 262 North Sam Houston Parkway East, Suite 230 Houston, TX 77060, with copies to Gerald H. Schiff, 400 East Kaliste Saloom Road, Suite 4200, Lafayette, LA 70508 and, Louis M. Phillips, One American Place, 301 Main Street, Suite 1600, Baton Rouge, LA 70825. The Chapter 11 Trustee shall provide copies of all Required Bid Documents received to the Postpetition Agent and Prepetition Agent. The Chapter 11 Trustee may extend the Bid Deadline with the written consent of the Postpetition Agent and the Prepetition Agent. If the Chapter 11 Trustee extends the Bid Deadline, the Chapter 11 Trustee will promptly notify all Potential Bidders who have signed a confidentiality agreement of such extension.

v.   **Bid Requirements**. All bids must include the following (the "<u>Required Bid Documents</u>"):

- a letter stating that the bidder's offer is irrevocable until [●], 2017;
- a duly authorized and executed purchase agreement, including the purchase price for the Assets to be purchased, together with all exhibits and schedules, marked to show any amendments and modifications to the Proposed Agreement, and any proposed modifications to the form of order approving the sale attached as Exhibit C to the motion filed in the Chapter 11 Case seeking approval of these Bid Procedures [Docket No. [●]]; and
- written evidence of a firm commitment for financing, or other evidence of ability to consummate the proposed transaction without financing, that is satisfactory to the Chapter 11 Trustee;

In addition, a bid will be considered only if the bid:

- sets forth the consideration for the Assets to be purchased;
- is not conditioned on obtaining financing or on the outcome of unperformed due diligence or corporate, stockholder or internal approval;
- provides evidence satisfactory to the Chapter 11 Trustee, in consultation with the Postpetition Agent and Prepetition Agent, of the bidder's financial wherewithal and operational ability to consummate the transaction, including the ability to obtain all necessary regulatory approvals and the anticipated timeframe for receiving such approvals;
- is accompanied by a deposit by wire transfer to the Debtor's estate equal to 5% of the cash purchase price (any such deposit, a "Good Faith Deposit"), with such deposit to constitute liquidated damages if the Potential Bidder shall default with respect to its offer;
- provides for the closing of the transaction by no later than [●] or such later date as is reasonably necessary to obtain all required regulatory approvals;
- sets forth the representatives who are authorized to appear and act on behalf of the bidder; and
- is received on or before the Bid Deadline.

vi.   **Auction**. In the event that the Chapter 11 Trustee timely receives two or more Qualified Bids with respect to the Assets (including a Credit Bid), the Chapter 11 Trustee shall conduct an auction (the "Auction").   The Auction shall be in accordance with the Bid Procedures and upon notice to all Qualified Bidders who have submitted Qualified Bids.  The Auction will be conducted at the offices of Gordon, Arata, Montgomery, Barnett, at 1980 Post Oak Blvd., Suite 1800, Houston, Texas, TX 77054, at 10:00 a.m. (Central Prevailing Time).

Representatives or agents of the Chapter 11 Trustee, the Postpetition Agent, the Prepetition Agent, the U.S. Trustee, any Qualified Bidder that has submitted a Qualified Bid and all of the Debtor's creditors (and the legal and Brokers to each of the foregoing), will be entitled to attend the Auction, and only Qualified Bidders will be entitled to make any subsequent bids at the Auction.  The Chapter 11 Trustee may object to and request a hearing regarding the attendance of any particular creditor at the Auction.

At least two business days prior to the Auction, the Chapter 11 Trustee will provide copies of the Qualified Bid or combination of Qualified Bids which the Chapter 11 Trustee believes is the highest or otherwise best offer (the "Starting Bid") to all Qualified Bidders which have informed the Chapter 11 Trustee of their intent to participate in the Auction and, if requested, will provide an explanation of how the Starting Bid is valued and a list containing the identification of all Qualified Bidders.

The Chapter 11 Trustee may, after consulting with the Postpetition Agent and the Prepetition Agent, employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids (as defined below)) for conducting the Auction, provided that such rules are (i) not inconsistent with the order entered by the Court approving these Bid Procedures, the Bankruptcy Code, or any other order

of the Court entered in connection herewith and (ii) disclosed to each Qualified Bidder.

Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder(s) that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Chapter 11 Trustee determines, in consultation with the Postpetition Agent and the Prepetition Agent, that such Subsequent Bid or combination of Subsequent Bids is (a) for the first round, a higher or otherwise better offer than the Starting Bid, and (b) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (defined below).  All bids shall be made openly, in the presence of all parties at the Auction. The Chapter 11 Trustee (in consultation with the Postpetition Agent and the Prepetition Agent), may determine appropriate minimum bid increments or requirements for each round of bidding. In the event of a dispute relating to the conduct of the Auction, such dispute will be heard by this Court.

For the avoidance of doubt, the Chapter 11 Trustee will provide the Postpetition Agent and the Prepetition Agent with full access to all information related to the Starting Bid and any Subsequent Bid.

After the first round of bidding and between each subsequent round of bidding, the Chapter 11 Trustee shall announce the bid or bids that it believes to be the highest or otherwise best offer or combination of offers (the "Leading Bid").

A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and written confirmation of the Leading Bid.

For the purpose of evaluating Subsequent Bids, the Chapter 11 Trustee may require a Qualified Bidder submitting a Subsequent Bid to submit, as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement acceptable to the Chapter 11 Trustee, the Postpetition Agent and the Prepetition Agent in their sole discretion) demonstrating such Qualified Bidder's ability to close the proposed transaction.

If the Chapter 11 Trustee receives more than one Qualified Bid on or prior to the Bid Deadline, the Auction shall occur and the Secured Parties shall have the right to participate in and submit Credit Bids (as defined below) at the Auction.  If the Chapter 11 Trustee receives only one Qualified Bid on or prior to the Bid Deadline, the Secured Parties shall automatically be deemed to submit a Credit Bid (as defined below) at or prior to the Auction, and the Auction shall occur, unless the Secured Parties notify the Chapter 11 Trustee, prior to five (5) days before the Auction, that they do not intend to submit a Credit Bid, in which case no Auction shall occur and the Chapter 11 Trustee shall seek approval of the only Qualified Bid at the Sale Hearing.

vii.   **Selection of Successful Bid(s)**. The Chapter 11 Trustee reserves the right, after consulting with the Postpetition Agent and the Prepetition Agent and providing notice to the U.S. Trustee, to (i) determine in its reasonable discretion which Qualified Bid (or combination thereof) is the highest or otherwise best and (ii) reject at any time prior to entry of a Court order approving an offer, without liability, any bid or offer (other than a Credit Bid) that the Chapter 11 Trustee in its reasonable discretion deem to be (x) inadequate or insufficient, (y) not a Qualified Bid or not otherwise in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or procedures set forth therein or herein, or (z) contrary to the best interests of the Debtor and its estate. If the Postpetition Agent or the Prepetition Agent does not agree with the Chapter 11 Trustee's determinations regarding any of the matters set forth in this paragraph, the Court shall make such determinations in lieu of the Chapter 11 Trustee.

Prior to the conclusion of the Auction, the Chapter 11 Trustee will, after consulting with the Postpetition Agent and the Prepetition Agent: (A) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the transaction; (B) identify the highest or otherwise best offer(s) (the "Successful Bid"); (C) determine which Qualified Bid (or combination thereof) is the Successful Bid and which is the next highest or otherwise best offer (the "Alternate Bid") for Assets subject to the Auction; and (D) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the successful bidder(s) (the "Successful Bidder"), the amount and other material terms of the Successful Bid and the identity of the party or parties that submitted the Alternate Bid (the "Alternate Bidder"). If the Postpetition Agent or the Prepetition Agent does not agree with the Chapter 11 Trustee's determinations regarding any of the matters set forth in this paragraph, the Court shall make such determinations in lieu of the Chapter 11 Trustee.

Within [●] business days following the completion of the Auction, and before the Sale Hearing, the Successful Bidder and the Chapter 11 Trustee, on behalf of the Debtor's estate, shall complete and execute all agreements, instruments or other documents necessary to consummate the sale contemplated by the Successful Bid.

The Chapter 11 Trustee shall file a notice of the identity of the Successful Bidder at the Auction and the amount of the Successful Bid with the Court within five business hours of the conclusion of the Auction and, at that same time, the Chapter 11 Trustee shall serve such notice by fax or e-mail to any creditor who requests such service in writing from the Chapter 11 Trustee's counsel no later than five days prior to the Auction and who provide their fax number and e-mail address.

The Chapter 11 Trustee will sell the Assets for the highest or otherwise best Qualified Bid (or combination thereof) to the Successful Bidder upon the approval of such Qualified Bid by the Court after the Sale Hearing.

viii.   **Credit Bid Rights**. Notwithstanding any other provision of these Bid Procedures or otherwise, each of the Secured Parties shall be entitled to credit bid some or all of their indebtedness at the Auction pursuant to section 363(k) of the Bankruptcy Code (a "Credit Bid"); provided, however, that if no Qualified Bids are received prior to the Bid Deadline, the Secured Parties may present such Credit Bid to the Chapter 11 Trustee no later than five (5) days prior to the date of the Auction. Without limiting the generality of the foregoing and notwithstanding any other provision of these Bid Procedures, the Secured Parties shall not be required to post any deposit to participate in and Credit Bid at the Auction and shall be automatically deemed to constitute "Qualified Bidders." In addition, any Credit Bid, whether prior to or at the Auction, shall be deemed to constitute a "Qualified Bid." The Secured Parties automatically shall be deemed the Successful Bidder at the Auction if the aggregate amount of their Credit Bid (if any) exceeds the cash consideration of the Leading Bid at the conclusion of the Auction. All rights of the Secured Parties to object to the Chapter 11 Trustee's selection of a Successful Bid or Alternate Bid, or to object to the consummation of the sale transaction represented by either such bid, are preserved, including, without limitation, any such rights under section 363(k) of the Bankruptcy Code.[7]

ix.    **The Sale Hearing**. If the Chapter 11 Trustee does not receive any Qualified Bids, the Chapter 11 Trustee will report the same to the Court at the Sale Hearing. At the Sale Hearing, the Chapter 11 Trustee will seek approval of the offer or offers constituting the Successful Bid and, at the Chapter 11 Trustee's election, the offer or offers constituting the Alternate Bid.

The Chapter 11 Trustee's presentation to the Court of an offer constituting the Successful Bid and Alternate Bid will not constitute the Chapter 11 Trustee's acceptance of either of any such bid, which acceptance will only occur upon approval of such bid by the Court at the Sale Hearing.

Following approval of the sale to the Successful Bidder, if the Successful Bidder fails to consummate the sale, then the Alternate Bid will be deemed to be the Successful Bid and the Chapter 11 Trustee, on behalf of the Debtor's estate, will be authorized, but not directed, to effectuate a sale to the Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Court. If such failure to consummate the purchase is the result of a breach by the Successful Bidder, the Successful Bidder's Good Faith Deposit shall be forfeited to the Debtor's estate and the Chapter 11 Trustee shall have the right to seek any and all other available remedies from the defaulting Successful Bidder, subject to the terms of the applicable purchase agreement.

---

[7] In the event that a Credit Bid is the Successful Bid, it is anticipated that the applicable assets of the Debtor will be purchased through the creation of a trust (the "Credit Bid Purchaser"), which will be controlled by one or more independent third parties, and that the neither the Secured Parties nor their affiliates will own, have control over, or be affiliated with the Credit Bid Purchaser. The Credit Bid Purchaser may, as determined by the Secured Parties, be structured as a liquidating trust created pursuant to a plan of reorganization.

x. **Highest or Otherwise Best Bid.** Whenever these Bid Procedures refer to the highest or best offer or Qualified Bid, such determination shall take into account any factors the Chapter 11 Trustee, in consultation with the Postpetition Agent and the Prepetition Agent, reasonably deem relevant to the value of the offer or Qualified Bid to the estate and may include, without limitation, the following: (i) the amount and nature of the consideration; (ii) the number, type and nature of any changes to the Proposed Agreement requested by the Qualified Bidder; (iii) the extent to which such modifications are likely to delay closing of the sale of the Assets and the cost to the Debtor's estate of such modification or delay; (iv) the likelihood of the Qualified Bidder being able to close the proposed transaction (including obtaining any required regulatory approvals) and the timing thereof; and (v) the net benefit to the Debtor's estate.

xi. **Reservation of Rights**. The Chapter 11 Trustee reserves its rights to, with the consent of the Postpetition Agent and Prepetition Agent, (i) extend the deadlines set forth in the Bid Procedures, (ii) modify bidding increments, (iii) adjourn or cancel the Auction or adjourn the Sale Hearing, by filing a notice of adjournment or cancellation, as applicable, with the Court, (iv) withdraw from the Auction any or all of the Assets at any time prior to or during the Auction, and (v) if the Chapter 11 Trustee determines, in its business judgment, that it will better promote the goals of the bidding process and discharge the Chapter 11 Trustee's fiduciary duties and not be inconsistent in any material respect with any Court order, modify the Bid Procedures or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Assets.

## A. Assignment Procedures

20. The Chapter 11 Trustee is not aware of any executory contract or unexpired leases owned by the Debtor, and therefore has not sought approval of detailed procedures relating to the assumption and assignment of such contracts and leases. However, it retains the right to do so to the extent it becomes aware of any material executory contracts or unexpired leases.

21. In the event the Export Pipelines are included in the Purchased Assets, the Chapter 11 Trustee has sought approval of the assumption and assignment thereof; *provided* that nothing in the Bid Procedures Order, the Sale Order or the Proposed Agreement (i) will authorize the transfer or assignment of the RUE without the Successful Bidder's compliance with all applicable legal requirements under non-bankruptcy law governing such transfer or assignment, or (ii) release, nullify, preclude or enjoin the enforcement of any liability to a governmental unit

under any environmental statutes or regulations that any entity would be subject to as the owner or operator of the Export Pipelines.

**B.  Notice**

22.     The Chapter 11 Trustee shall serve within two (2) business days (by first class mail, postage prepaid) after entry of the Bid Procedures Order (the "Mailing Deadline"), the Sale Notice upon the following parties: (a) the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), (b) counsel to the Prepetition Agent, (c) counsel to the Postpetition Agent, (d) all other parties asserting a lien on or a security interest in the assets of the Debtor to the extent reasonably known to the Debtor, (e) the Office of the United States Attorney General for the Southern District of Texas, (f) the Internal Revenue Service, (g) counsel for the Department of the Interior, Bureaus of Safety & Environmental Enforcement ("BSEE") and Ocean Energy Management, (h) counsel to Bennu Oil & Gas, LLC, (h) counsel to Statoil USA E&P Inc. ("Statoil"), (i) the creditors listed on the Debtor's schedules of assets and liabilities, and (j) all parties that have requested notice pursuant to Bankruptcy Rule 2002, pursuant to Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014 and the Local Rules (collectively, the "Notice Parties").

23.     Within one business day after the conclusion of the Auction, the Chapter 11 Trustee will file a notice identifying the Successful Bidder(s) (the "Notice Of Successful Bidder").

24.     The Chapter 11 Trustee submits that the proposed Sale Notice and Notice of Successful Bidder, and providing notice of this Motion, the Auction and the Sale Hearing as described herein, complies fully with Bankruptcy Rule 2002 and the Local Rules and constitutes good and adequate notice of the Sale and the proceedings with respect thereto.  Therefore, the

Chapter 11 Trustee respectfully requests that this Court approve the form of the Sale Notice and the notice procedures proposed above.

## JURISDICTION

25.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

26.     The bases for the relief requested herein are sections 105, 363, 365, 503(b) and 507 of title 11 of the Bankruptcy Code, Rules 2002, 6004, 6006, 9007 and 9008 of the Bankruptcy Rules and the Local Rules.

## BASIS FOR RELIEF

### A. The Bid Procedures Are Fair, Appropriate and Are Designed to Maximize the Value Received for the Assets

27.     Bankruptcy Code section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  The Chapter 11 Trustee submits that the Bid Procedures are appropriate, consistent with procedures routinely approved by courts in this district, ensure that the bidding process is fair and reasonable and will yield the maximum value for the Debtor's estate and creditors.   The Bid Procedures proposed herein are designed to maximize the value received for the Assets by facilitating a competitive bidding process in which all potential bidders are encouraged to participate and submit competing bids. The Bid Procedures provide potential bidders with sufficient notice and an opportunity to acquire information necessary to submit a timely and informed bid.  Thus, the Chapter 11 Trustee and all parties in interest can be assured that the consideration for the Assets will be fair and reasonable. At the same time, the Bid Procedures provide the Chapter 11 Trustee with an adequate opportunity to consider all competing offers and to select, in its reasonable business judgment

and in consultation with the Secured Parties, the highest and best offer for the Assets. Accordingly, the Chapter 11 Trustee submits that the Court should approve the Bid Procedures.

**B. Approval of the Sale is Warranted Under Section 363 of the Bankruptcy Code**

28.     Section 363(b) of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).  A debtor must demonstrate a sound business justification for a sale or use of assets outside the ordinary course of business. *See, e.g., In re Martin*, 91 F.3d 389 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513 (7th Cir. 1991)); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Institutional Creditors of Cont'l Air Lines, Inc. v. Confl Air Lines Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983).

29.     Courts typically consider the following factors in determining whether a proposed sale meets this standard:

a)  whether a sound business justification exists for the sale;
b)  whether adequate and reasonable notice of the sale was given to interested parties;
c)  whether the sale will produce a fair and reasonable price for the property; and
d)  whether the parties have acted in good faith.

*In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

30.     The Chapter 11 Trustee possesses ample and sound business reasons for selling the Assets.  As discussed above, the Chapter 11 Trustee has determined that the comprehensive sale process will maximize the return to the Debtor's creditors.  The Sale (in whatever form that ultimately results) represents the highest and best use for the Debtor's assets. Under these circumstances, sound business reasons exist that justify the sale of the Assets outside of the ordinary course of business.

31.     The Chapter 11 Trustee also meets the additional requirements necessary to approve a sale under section 363 of the Bankruptcy Code. As stated herein, the Chapter 11

Trustee will provide adequate notice of the Sale to interested parties, and the Chapter 11 Trustee submits that the aforementioned notice procedures are reasonable and adequate under the circumstances.  In addition, the Chapter 11 Trustee will continue to market the Assets up until the Bid Deadline in order to maximize the number of participants who may participate as buyer at the Auction. Accordingly, the Chapter 11 Trustee is confident that the sale process will maximize the value to be achieved from the Sale and that the sale price is fair and reasonable.

### C. The Proposed Sale Transaction Satisfies the Requirements of Bankruptcy Code Section 363(f) for a Sale Free and Clear

32.     The Chapter 11 Trustee requests approval to sell the Assets free and clear of any and all liens, claims, interests and encumbrances (except for any assumed liabilities of the Debtor) in accordance with section 363(f) of the Bankruptcy Code. Pursuant to section 363(f), a debtor in possession may sell estate property "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

a) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
b) such entity consents;
c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
d) such interest is in bona fide dispute; or
e) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *see Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988) (because section 363(f) is written in the disjunctive, a court may approve a "free and clear" sale even if only one of the subsections is met).

33.     Section 363(f) is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." 11 U.S.C. § 105(a); see *In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *3, 6 (Bankr. D. Del. Mar. 27, 2001); *Volvo*

*White Truck Corp. v. Chambersburg Beverage Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of claims] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

34.     The Chapter 11 Trustee submits that the Sale will satisfy the requirements of section 363(f) of the Bankruptcy Code.  To the extent a party objects to the Sale on the basis that it holds a lien or encumbrance on the Assets, the Chapter 11 Trustee believe that any such party could be compelled to accept a monetary satisfaction of such claims or that such lien or encumbrance is in *bona fide* dispute.  In addition, to the extent the Chapter 11 Trustee discovers that a party may hold a lien or encumbrance on all, or a portion of, the Assets, the Chapter 11 Trustee will provide such party with notice of, and an opportunity to object to, the Sale. Absent objection, each such party will be deemed to have consented to the sale of the Assets.

35.     Accordingly, the Chapter 11 Trustee believes that the Sale (i) will satisfy the statutory prerequisites of section 363(f) of the Bankruptcy Code and (ii) should be approved free and clear of all liens, claims, interests and encumbrances.

**D. A Successful Bidder Should Be Entitled to the Protections of Bankruptcy Code Section 363(m)**

36.     Pursuant to Bankruptcy Code section 363(m), a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *Mark Bell Furniture Warehouse, Inc., v. D. M. Reid Assocs., Ltd. (In re Mark Bell Furniture Warehouse, Inc.)*, 992 F.2d 7, 8 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, No. 03-51524, 2007 WL 1428477, *2 (Bankr. D. N.J. May 11, 2007); *Abbotts Dairies of Pa.*, 788 F.2d 143, 147 (3d Cir. 1986).

37.     Any agreement consummating a Sale will be negotiated at arm's-length by sophisticated parties, each represented by their own advisors. Accordingly, the Chapter 11 Trustee requests that the Sale Order include a provision that the Successful Bidder for the Assets

is a "good faith" purchaser within the meaning of Bankruptcy Code section 363(m).   The Chapter 11 Trustee believes that providing any Successful Bidder with such protection will ensure that the maximum price will be received by the Chapter 11 Trustee for the Assets and closing of the same will occur promptly.

### E. Assumption and Assignment of Executory Contracts and Unexpired Leases Should Be Authorized

38.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The standard governing bankruptcy court approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's reasonable business judgment supports assumption or rejection. *See, e.g., Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303 (5th Cir. 1985); *In re TransAmerican Nat'l Gas Corp.*, 79 B.R. 663, 667 (Bankr. S.D. Tex. 1987)*; Lifemark Hospitals, Inc. v. Liljeberg Enters., Inc. (Matter of Liljeberg Enters., Inc.),* 304 F.3d 410, 438 (5th Cir. 2002).

39.     The business judgment test "requires only that the trustee demonstrate that [assumption] or rejection of the contract will benefit the estate."   *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co., (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987).   *See also*, *Matter of Liljeberg Enters., Inc.*, 304 F.3d at 438 (citing *Century Indem. Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l Gypsum Co.)*, 208 F.3d 498, 505 (5th Cir.), *cert. denied*, 531 U.S. 871 (2000)) ("The act of assumption must be grounded, at least in part, in the conclusion that maintenance of the contract is more beneficial to the estate than doing without the other party's services.").   Any more exacting scrutiny would slow the administration of the debtor's estate and increase costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's

ability to control a case impartially. *See Richmond Leasing*, 762 F.2d at 1311.   Moreover, pursuant to section 365(b)(1) of the Bankruptcy Code, for a debtor to assume an executory contract, it must "cure, or provide adequate assurance that the debtor will promptly cure," any default, including compensation for "actual pecuniary loss" relating to such default. 11 U.S.C. 365(b)(1).

40.     Once an executory contract is assumed, the trustee or debtor in possession may elect to assign such contract. *See In re Rickel Home Center, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) ("The Code generally favors free assignability as a means to maximize the value of the debtor's estate.").

41.     Section 365(f) of the Bankruptcy Code provides that the "trustee may assign an executory contract … only if the trustee assumes such contract … and adequate assurance of future performance is provided." 11 U.S.C. § 365(f)(2).  The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given a "practical, pragmatic construction." *In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009); *see also In re Decora Indus.*, 2002 U.S. Dist. LEXIS 27031, at *23 (D. Del. May 20, 2002) ("[A]dequate assurance falls short of an absolute guarantee of payment.").

42.     Because the case law is unsettled on this issue, the Chapter 11 Trustee, out of an abundance of caution, requests approval under Bankruptcy Code section 365 of the Debtor's assumption and assignment of the RUE in connection with the Sale.  The Chapter 11 Trustee further requests authorization under the Sale Order to transfer the RUE to the Successful Bidder subject to the Successful Bidder's ability to obtain all necessary regulatory approvals within the anticipated timeframe for receiving such approvals.

## **NOTICE**

43.      Notice of this Motion has been provided to each of the Notice Parties. The Chapter 11 Trustee submits that no other or further notice need be provided.  No previous motion for the relief sought herein has been made to this or any other court.

## **NO PRIOR REQUEST**

44.      No prior request for the relief sought herein has been made to this Court or any other Court in connection with this Chapter 11 Case.

**WHEREFORE**, the Chapter 11 Trustee respectfully requests entry of an order (i) granting the relief requested herein and (ii) granting the Chapter 11 Trustee such other and further relief as the Court deems just and proper.

Dated:   July 12, 2017

<div style="margin-left:40%">

Respectfully submitted,

**KELLY HART & PITRE**

*/s/ Louis M. Phillips*
Louis M. Phillips (La. Bar No. 10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, La 70825
Phone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com

*Attorney for Gerald H. Schiff,*
*Chapter 11 Trustee for Bennu Titan, LLC*

</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing pleading was served by electronic mail via the Court's ECF system to all parties authorized to receive electronic notice in this case on July 12, 2017.

/s/ Louis M. Phillips
Louis M. Phillips

**Exhibit A**

(Bid Procedures Order)

**Exhibit B**

(Sale Notice)

**Exhibit C**

(Sale Order)

Americas 92888729 (2K)